# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK LAMONT MATTHEWS a/k/a FREDERICK MATTEWS, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | No. 19-1164-JDT-cgc |
| TENNESSEE DEPARTMENT OF CORRECTION, ET AL., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER TO MODIFY THE DOCKET, PARTIALLY DISMISSING COMPLAINT AND DIRECTING CLERK TO ISSUE A THIRD-PARTY SUBPOENA

On August 8, 2019, Plaintiff Frederick Lamont Matthews a/k/a Frederick Mattews,[1] who at the time of filing was incarcerated at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*.[2] (ECF Nos. 1 & 2.) The Court issued an order the same day, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as the Tennessee Department of Correction (TDOC), TDOC Commissioner of

---

[1] Plaintiff spells his last name "Matthews," but it is spelled "Mattews" in the Tennessee Department of Correction system. (*See* ECF No. 2-1 at PageID 24-27); *see also* https://apps.tn.gov/foil-app/search.jsp. The Clerk is DIRECTED to modify the docket to include the alternate spelling as an alias.

[2] On October 22, 2019, Matthews notified the Court that he has been transferred to the Lois M. DeBerry Special Needs Facility in Nashville, Tennessee. (ECF No. 5.)

Prisons Lee Daniels,[3] NWCX Warden Shawn Phillips, NWCX Associate Warden James Cooper, NWCX Chief of Security Justin Lanom, Captain Benn Triplet, Officer Michael Cain, West Regional Director of Wardens Debra Johnson, and Internal Affairs Coordinator Jason Rogers.

Matthews alleges that on March 24, 2019, he was inside his housing unit waiting to be called to dinner. (ECF No. 1 at PageID 3.) Officer Cain was assigned to Matthews's housing unit at the time, and Captain Triplet was the shift commander. (*Id.*) As Matthews was waiting, Cain allegedly left his post and did not secure the pod door, which allowed other prisoners to come and go without supervision. (*Id.* at PageID 3–4.)

A group of prisoners approached Matthews and demanded he give them his property. (*Id.* at PageID 4.) Matthews refused and stood in the entryway of his cell to block the group's entry. (*Id.*) The prisoners "overpowered" him and assaulted him in the common area outside his cell. (*Id.*) Matthews yelled for Cain to help, but Cain allegedly "sat down inside the security cage and witnessed the prisoners force [Matthews] into [his] cell and was aware that [he] was being assaulted and beaten." (*Id.*) Matthews asserts that Cain "did not call a code" or try to protect him. (*Id.*) As he lost consciousness, Matthews allegedly heard the group yell for Cain to reopen the cell door because they had locked themselves inside during the attack. (*Id.* at PageID 4–5.)

After the attack, Matthews's cellmate helped him up and told him "about how Michael Cain was aware of the incident and how it's a culture at this institution to not do anything." (*Id.* at PageID 5.) Matthews called his family and told them about the attack, and his family called the NWCX to complain. (*Id.*) In response, the NWCX sent "Strike Force One" office Eason, who is

---

[3] The Commissioner of the TDOC is Tony C. Parker. *See* https://tn.gov/correction/about-us/commissioner-tony-c-parker.html. Though Matthews identifies Defendant Lee as the Commissioner of Prisons, his position apparently is that of an assistant or associate commissioner.

not a Defendant, to escort Matthews for medical treatment. (*Id.* at PageID 5-6.) Triplet took Matthews's statement about the incident and allegedly told him that, because the NWCX is understaffed, inmates often move unattended throughout different housing assignments. (*Id.* at PageID 6.) Matthews received medical care and was taken to a protected-custody unit. (*Id.*)

Matthews alleges that Rogers "failed to investigate and catch the group of prisoners" who had assaulted him and "had a careless attitude." (*Id.*) Matthews further alleges that he developed mistrust of prison authorities after the attack and began suffering from mental disorders, including paranoia of future attacks and depression. (*Id.* at PageID 6-7.)

Matthews seeks transfer to another facility and compensatory damages. (*Id.* at PageID 8.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is

3

entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Matthews filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Because Matthews is no longer at the NWCX, his request for a transfer is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (complaint for declaratory or injunctive relief is rendered moot by the plaintiff's transfer to a different prison facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was

transferred to another facility). He may therefore recover only damages, if anything, in this lawsuit.

To the extent Matthews seeks to sue the Defendants for damages in their official capacities, his claims are against their employer, the TDOC. Claims against the TDOC are, in turn, treated as claims against the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. Matthews, therefore, does not state a valid claim against the TDOC or any Defendant in his or her official capacity.

Matthews does not allege any action or misconduct by Defendants Daniels, Phillips, Cooper, Lanom, or Johnson.[4] When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Matthews's allegations that Defendant Cain failed to protect him amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official

---

[4] Defendant Debra Johnson died on August 7, 2019. *See* Memphis Commercial Appeal (Aug. 9, 2019), https://www.commercialappeal.com; *see also* https://tn.gov/correction/sp/correctional-administrator-debra-k-johnson.html.

must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38.

In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003). "[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that the officer "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico*, 68 F. App'x at 639.

Matthews alleges that Officer Cain left his post unattended and unsecured, which allowed the group of prisoners to enter Matthews's housing pod and attack him. Matthews further alleges that Cain witnessed the attack take place and did not intervene or attempt to stop it. He further alleges that Captain Triplet informed him the NWCX was understaffed, so prisoners regularly traversed other housing pods unattended. That allegation suggests that Cain may have been aware of the potential for an attack when he left his housing pod unsecured.[5] These allegations are sufficient to state an Eighth Amendment claim against Cain for failing to protect Matthews from the attack and failing to intervene in the attack as it occurred.

Matthews does not allege that Captain Triplet was directly responsible for the attack but attempts to impute liability to him in his role as the shift commander and supervising officer.

---

[5] Matthews also alleges that, as he lost consciousness, he heard the group of inmates yell for Cain to reopen the cell door because they had locked themselves inside during the attack. Matthews may be suggesting that Cain intentionally failed to secure the pod door when he left his post.

7

However, under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

Matthews alleges that Triplet should be held responsible because he was aware that the NWCX was understaffed and had issues with inmates moving throughout the prison. However, that Triplet knew inmates moved around the housing assignments does not also mean he was aware of an excessive risk to Matthews's health and safety, and Matthews does not allege as much. Nor does he allege that Triplet knew Officer Cain left his post and the pod unsecured and encouraged or condoned that behavior. Matthews's allegations are insufficient to hold Triplet liable for the attack.

Nor does Matthews state a claim against Defendant Rogers. He alleges that Rogers failed to investigate the attack and "had a careless attitude." Matthews has no right to an investigation of his allegations about Officer Cain. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir.

8

2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed properly to investigate his grievances because there is no "federally protected liberty interest" in a certain resolution or investigation of grievances). Nor does Matthews have a constitutional right to an investigation of the assault. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation.").

In conclusion, the Court DISMISSES Matthews's claims against the TDOC, all of his claims against the Defendant TDOC employees in their official capacities, and his individual-capacity claims against Defendants Daniels, Phillips, Cooper, Lanom, Triplet, Johnson, and Rogers for failure to state a claim on which relief can be granted and for seeking monetary relief against a Defendant immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). The Court will allow him to proceed on his Eighth Amendment failure to protect claim against Defendant Michael Cain in his individual capacity.

Though Matthews has stated a valid claim against Defendant Cain, process cannot be issued at this time. The complaint and grievance responses attached to the complaint indicate that Cain is no longer employed by the TDOC, (ECF No. 1 at PageID 2; ECF No. 1-1 at PageID 15), and Matthews states that he is unaware of Cain's current location or employer. (ECF No. 1 at PageID 2.) As Matthews remains incarcerated, he cannot reasonably be expected to obtain that information. Therefore, it is the Court's responsibility to ensure that process is served, if possible. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

The Clerk is DIRECTED to issue a third-party subpoena for the TDOC and deliver it to the U.S. Marshal for service, along with a copy of this order. The subpoena shall direct the

Tennessee Department of Correction, 320 Sixth Avenue North, Nashville, Tennessee 37243-0465, to provide to the Court, within 30 days after service of the subpoena, either the last known home address and telephone number or the current place of employment of Michael Cain, who was employed as a correctional officer at the Northwest Correctional Complex on March 24, 2019.

    Due to security and privacy concerns, any information provided by TDOC in compliance with the subpoena shall not be made available to Plaintiff, but shall be filed by the Clerk *ex parte* and under seal. If TDOC provides sufficient information regarding Defendant Cain's present location, the Clerk shall issue process and deliver it to the Marshal for service.

IT IS SO ORDERED.

                                          s/ **James D. Todd**
                                         JAMES D. TODD
                                         UNITED STATES DISTRICT JUDGE